IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT W MILLSAPS, individually and as the personal representative of the Estate of BRENDA LEE MILLSAPS | : : : : | MDL 875 |
| v. | : : | |
| ALUMINUM COMPANY OF AMERICA, et al. | : : | EDPA CIVIL NO. 10-84924 |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE                                            December 2, 2011

Plaintiff has filed a motion to compel seeking an order directing defendant Aluminum Company of American ("Alcoa") to provide discovery, to which Alcoa has responded and submitted a related motion for protective order. See Docs. 24 & 25. The primary dispute raised by the motions is whether Alcoa should be required to produce documents gathered but not produced in a previous case that settled, referred to by the parties as the "Satterfield" documents. I will grant in part and deny in part plaintiff's motion, and deny Alcoa's motion.

**I.       PROCEDURAL HISTORY**

In this "bystander" asbestos case, it is alleged that Brenda Lee Millsaps was exposed to asbestos fibers from clothes worn by her father-in-law, who worked at Alcoa's Tennessee plant from 1965 to 1996. Brenda Lee Millsaps died of mesothelioma in 2009, and plaintiff is her surviving spouse. The case was first brought in the Circuit Court for Blount County, Tennessee, and Alcoa removed it to federal court based on diversity

jurisdiction, after which it was transferred to this court as part of MDL 875. See Docs. 1 & 24 Mem. at 7.[1]

On May 10, 2011, the Honorable Eduardo C. Robreno referred the case to the undersigned to conduct pretrial proceedings. See Doc. 15. Pursuant to the scheduling order dated June 17, 2011, all fact discovery must be completed by December 12, 2011. See Doc. 18.[2] On October 17, 2011, plaintiff submitted its motion to compel, to which Alcoa responded on October 31, 2011, together with a motion for protective order. See Docs. 24-26. Plaintiff filed a response to the protective order on November 14, 2011, and I held oral argument on the motions on November 21, 2011. See Docs. 29, 31.[3]

---

[1] There are only two defendants in this case, Alcoa and Breeding Insulation Company, Inc. Breeding is a Tennessee corporation, and Alcoa's removal was based on the allegation that Breeding was fraudulently joined to defeat diversity jurisdiction. Prior to transfer to this district, plaintiff moved for remand to state court. Plaintiff has renewed the remand motion in this court. See Docs. 20 & 22.

[2] I will rule separately on Alcoa's unopposed motion for extension of deadlines.

[3] This is the first time I have addressed a discovery dispute in this case. I held a telephone conference on April 8, 2011, on a different set of cases in which Alcoa is not a party, with respect to a third-party subpoena issued to Alcoa by the same plaintiff's counsel. At that time, Alcoa was in the process of scanning a large collection of documents using optical character recognition (OCR) software, a process Alcoa says is now complete. I directed plaintiff's counsel to submit a proposed list of search terms so that the resulting database could be searched for responsive documents. In the context of the pending motion, I have been made aware that the list submitted by plaintiff's counsel is 26 pages long and contains over 900 terms (products and manufacturers), that Alcoa has objected on various grounds to many of the terms on the list, and that the parties are in the process of trying to reach agreement on a narrowed search term list. See Docs. 25 at 3-4; 26-1; N.T. 11/21/11 at 30.

2

## II. HISTORY OF THE DISPUTE

The thrust of plaintiff's argument is that Alcoa has been avoiding providing discovery, primarily document production, to plaintiff counsel's firm for years through a variety of maneuvers including changing counsel and promising but not providing discovery. Specifically, plaintiff recounts a discovery battle between plaintiff counsel's firm and Alcoa in an earlier Tennessee case entitled Satterfield v. Breeding Insulation Co. and Alcoa Inc., No. 3-237-03 (Knox County Circuit Court), which was similar to the instant case in terms of plant location and the manner of alleged exposure. Making a long story short, following many discussions and disputed discovery motions, Alcoa amassed approximately 1300 boxes of documents containing potentially relevant documents (totaling approximately three million pages), many of which plaintiff's counsel reviewed, and Alcoa agreed to scan and produce the documents to plaintiff. Some of the documents were scanned and produced, however the matter settled before the entire production was made. See Doc. 24 Mem. at 4; N.T. 11/21/11 at 10, 22. Plaintiff now seeks to compel Alcoa to produce the remaining documents from those 1300 boxes.

According to current counsel for Alcoa, all the documents in the 1300 boxes that were amassed in Satterfield, in addition to others, have been scanned using OCR software and are word searchable, and also have all been reviewed for privilege.[4] See N.T.

---

[4] Alcoa's counsel asserts that Alcoa is not able to exactly duplicate the boxes that were previously assembled in Satterfield or to identify exactly which scanned documents were in those boxes, explaining that following settlement the documents were returned to

3

11/21/11 at 27, 54-55. Alcoa is prepared to search these documents, but resists plaintiff's request that discs containing all the documents be turned over to plaintiff so that plaintiff can perform the search for relevant documents.

## III. DISCUSSION

Plaintiff's request that all of the 1300 boxes of Alcoa documents be turned over to plaintiff's counsel is denied. Plaintiff does not contend that all the documents are relevant; far from it, as counsel admits that there will be many documents that are not relevant or responsive to their requests. Therefore, many if not most of the documents are not discoverable, and plaintiff is not entitled to the entire set of documents. Nor does the history of the <u>Satterfield</u> litigation change this result. The <u>Satterfield</u> case was settled, and the fact that Alcoa was prepared to turn over certain documents for review in that case has no bearing on the production of relevant documents in this case. Plaintiff's argument that Alcoa waived any objection to production based on its agreement in <u>Satterfield</u> is rejected for the same reason.

The question then becomes how and when Alcoa will identify relevant documents to produce to plaintiff.[5] The "how" is made easier by the fact that all the documents are

---

the locations from which they were collected. <u>See</u> N.T. 11/21/11 at 29, 35-36. Nevertheless, counsel confirmed that the documents have all been scanned and can all be searched.

[5] The parties do not dispute that Alcoa has previously produced to plaintiff counsel's firm many thousands of pages of documents in connection with other asbestos cases, and plaintiff agrees that they need not be produced again in this case. Therefore, to the extent Alcoa seeks an order protecting it from producing documents that were

4

now in word-searchable electronic format, and the logical next step is to formulate a list of appropriate search terms. The parties have begun this process with respect to cases in which Alcoa is responding to a third-party subpoena. See supra n.3.

Plaintiff's concern with allowing Alcoa to perform the search is that the search will not turn up the relevant documents, and by way of example counsel discussed examples of documents that mentioned neither "asbestos" nor plaintiff's job category or plant location that are highly relevant to its case. One document discussed the hazards of mercury on workers' clothing, and other documents discuss safety practices at other plants, both of which are potentially relevant to asbestos safety at the Tennessee plant at issue but which Alcoa might not deem relevant if they perform a limited search. See N.T. 11/21/11 at 9, 12-14. On the other hand, Alcoa's concern is that plaintiff's true goal is devising a list that is so broad that every single Alcoa document will end up be being produced regardless of its true relevance.

In my judgment, both parties' concerns can be fairly addressed with an appropriately tailored term search. The search terms should be broad enough to be able to say with reasonable confidence that the vast majority of relevant documents will be captured. On the other hand, the purpose of the endeavor must be to find relevant documents, and not to fish for documents that may or may not be relevant to other claims or other plaintiffs.

---

previously produced to plaintiff counsel's firm, Alcoa's motion is moot.

The parties are in the best position to devise the appropriate search terms, and will be directed to finalize their discussions within a week, at which time the database will be searched for the agreed upon terms. If there are some terms upon which the parties cannot agree, a maximum of 100 disputed search terms will be submitted to me for determination and, if need be, the database will have to be searched again for any additional terms I direct.

The "when" of Alcoa's production shall be prompt. As made clear at the oral argument, I find little justification for there not having been a search and production from Alcoa's database at this stage of the case, and I disagree with Alcoa's argument that their agreement to search their database renders plaintiff's motion moot. The recent substitution of counsel required time for new counsel to become familiar with Alcoa's document databases and production histories, which has now been accomplished. There shall be no further delay in Alcoa's production.[6]

---

[6] As agreed, counsel for Alcoa will also determine whether the exhibits to the prior deposition of its corporate designee (Mr. Bonney) have been produced, and if not, produce them right away. See N.T. 11/21/11 at 38-39.

Finally, this Memorandum and Order are based upon Alcoa's representation that all of its potentially relevant documents – the <u>Satterfield</u> documents included – have been scanned and are word searchable. If plaintiff chooses, plaintiff is permitted to question the appropriate Alcoa designee in the area of Alcoa's document storage, collection and scanning to confirm this representation.

An appropriate order follows.