# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY   :  Civil Action No. MDL 875
LITIGATION (NO. VI)         :

                 :

This Document Relates to        :

ROBERT W. MILLSAPS, Individually, and as  :
Personal Representative of the Estate of Brenda :
Lee Millsaps and for the Benefit of the Children :
Of Robert W. Millsaps and Brenda Lee Millsaps, :

        :

     Plaintiffs,     :

        :

v.            :  File No.: 2:10-cv-84924-ER

        :

ALCOA INC. (Aluminum Company of America) :
and BREEDING INSULATION COMPANY, INC., :

        :

     Defendants.    :

## PLAINTIFF'S MOTION TO STRIKE PRIVILEGE LOG AND FOR SANCTIONS

   Plaintiff respectfully moves the Court pursuant to Fed. R. Civ. P. 26 and 37 and as

directed by the Court's July 31, 2012 Order, to provide relief with regard to Defendant Alcoa

Inc.'s tardy, improper and defective privilege log, including to: 1) strike the privilege log and

require production of all documents listed in it, 2) allow Plaintiffs to re-depose Alcoa's corporate

representative to question him regarding the documents, and 3) award attorney fees and costs.

In the alternative should the Court find it necessary, Plaintiff requests that the Court require

production of the logged materials (or a representative sample of 50 documents to be chosen by

Plaintiff) to the Court (or to a Special Master at Alcoa's expense) for an *in camera* review.  In

further support, Plaintiff submits herewith Plaintiff's brief in support and related exhibits.

1

This the 2nd day of August, 2012.

s/Mona Lisa Wallace
Mona Lisa Wallace
N.C. Bar No. 9021
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
Tel. No. (704) 633-5244
Fax: (704) 633-9434
mwallace@wallacegraham.com

s/Gregory F. Coleman
Gregory F. Coleman, BPR No. 014092
Greg Coleman Law PC
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, TN 37902
(865) 247-0080 (phone)
(865) 522-0049 (fax)
greg@gregcolemanlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of August, 2012, I served the foregoing PLAINTIFF'S MOTION TO STRIKE PRIVILEGE LOG AND FOR SANCTIONS on all counsel of record by electronic mail and/or regular mail as follows:

Robert E. Thackston, Beverly M. Bond, Stephanie L. Spardone
Edward Slaughter, Susan Egeland, Barret Marshall
Hawkins, Parnell, Thackston & Young LLP
4514 Cole Avenue, Suite 550
Dallas, TX 75205
rthackston@hptylaw.com
bbond@hptylaw.com
sspardone@hptylaw.com
eslaughter@hptylaw.com
segeland@hptylaw.com
bmarshall@hptylaw.com

John A. Lucas, John T. Winemiller
Merchant & Gould, P.C.
110 Tyson Blvd., Ste. 203
Alcoa, TN 37701-4111
jlucas@merchantgould.com
jwinemiller@merchantgould.com

Jack C. McCants
Forman Perry Watkins Krutz & Tardy
City Centre, Suite 100
200 South Lamar Street
Jackson MS 39201-4099
mccantsjc@fpwk.com

Steven L. Hurdle
Arnett Draper & Hagood
2300 First Tennessee Plaza
Knoxville, TN 37929
shurdle@adhknox.com

s/Mona Lisa Wallace
Mona Lisa Wallace

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY :     Civil Action No. MDL 875
LITIGATION (NO. VI)
        :

This Document Relates to     :
    :
ROBERT W. MILLSAPS, Individually, and as   :
Personal Representative of the Estate of Brenda  :
Lee Millsaps and for the Benefit of the Children  :
Of Robert W. Millsaps and Brenda Lee Millsaps,  :
    :
Plaintiffs,     :
    :
v.     :     File No.: 2:10-cv-84924-ER
    :
ALCOA INC. (Aluminum Company of America)  :
and BREEDING INSULATION COMPANY, INC.,:
    :
Defendants.     :

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO STRIKE PRIVILEGE LOG AND FOR SANCTIONS

Plaintiff submits this brief in support of his motion requesting that the Court deem Alcoa's privilege log to be defective and provide relief including: 1) strike the privilege log and require production of all documents listed in it; 2) allow Plaintiffs to re-depose Alcoa's corporate representative, Jeff Shockey, to question him regarding the documents; and 3) award attorney fees and costs. In the alternative at the Court's election, Plaintiff requests the Court require Alcoa produce the logged materials (or a representative sample of 50 items to be chosen by Plaintiff) to the Court (or to a Special Master at Alcoa's expense) for an in camera review.

## I. INTRODUCTION

As discussed below, Alcoa waited until late in discovery and until Plaintiff had to file a motion to compel and obtain a Court Order, before Alcoa produced a privilege log. Then – even though under a Court discovery Order – Alcoa produced a log that was plainly insufficient on its

1

face as it did not identify senders or recipients of documents. Once Alcoa finally produced a log identifying senders and recipients, it appeared Alcoa previously had produced many of the documents listed on the log. Indeed, many of the items on the log had been produced 30 or more times. Thus, after reviewing these documents, deciding they were not privileged, and producing them, Alcoa and its counsel now list them on the privilege log as subject to attorney-client or attorney work product protection, a position which is clearly baseless. Making matters worse, while claiming attorney-client privilege Alcoa refuses, despite Plaintiff's requests, to identify which of the senders or recipients in its amended log (if any) are attorneys.

Further, reviewing the documents Alcoa produced in the past that are on its log, it is plain that Alcoa in many instances has mischaracterized the document in its log, thereby creating an impression that documents were privileged when they were not. The upshot is to cast grave doubt on the validity of Alcoa's privilege log; the log reflects that to this day Alcoa continues to withhold hundreds if not thousands of pages of documents. These include documents which appear to be related to the key issues and time periods herein. Plaintiff requests that all of these documents be produced.

Furthermore, because Alcoa apparently improperly withheld many documents listed on its log, Plaintiff has not been able to use any of those documents in taking the depositions of witnesses, or more recently in working with Plaintiff's experts. Accordingly, Plaintiff asks that the Court order that after the documents are produced, Plaintiff be allowed to re-open the Alcoa Rule 30(b)(6) deposition to ask about the previously unproduced documents.

Plaintiff believes Alcoa's violations of the discovery rules are sufficiently egregious that the Court should simply deem the privilege waived and order production of all remaining documents listed in the privilege log. However, in the alternative and should the Court deem it

necessary, Plaintiff requests that the Court require production *in camera* of the logged materials (or a representative sample of 50 documents or some other number of documents to be chosen by Plaintiffs from the log) so that the Court may itself review the documents and determine whether they should be produced. Plaintiff also requests the Court award costs and fees incurred with regard to this motion. As discussed below, Plaintiff was forced to laboriously review the log and available documents in preparing this motion and supporting brief.

## II. FACTUAL BACKGROUND

After Alcoa failed to produce a privilege log, despite multiple requests and after much time in discovery had passed, Plaintiff filed a motion to compel on March 12, 2012. (Doc. 64). By Order dated March 28, 2012 (Doc. 79), the Court denied Plaintiff's motion without prejudice and instructed Alcoa to produce a privilege log by May 31, 2012. However, when Alcoa produced its log, Alcoa failed to provide the basic privilege log information of identifying the senders and recipients of the documents in question. (See correspondence at Exhibit 1). An example of a page from the original privilege log that Alcoa produced on May 31 is attached as Exhibit 2 showing how Alcoa failed to identify the authors or recipients of the documents. Thus, Alcoa's original May 31 privilege log placed Alcoa in violation of the Court's Order requiring production of a proper privilege log and is in itself a basis for sanctions.[1]

---

[1] Rule 37(b)(2) empowers the district court to impose sanctions for failure to comply with a discovery order. Though it outlines a number of available sanctions, this rule does not limit the court as the court has authority to "issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Here, despite being expressly ordered to provide a privilege log, Alcoa provided one that was on its face inadequate since it does not state authors, senders or recipients of documents. For all documents and communications for which Alcoa claims attorney-client or attorney work product protection, Alcoa must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). By failing to provide names of senders/recipients, Alcoa failed to comply with the Rule. *See McCrink v. Peoples Benefit Life Ins. Co.,* 2004 WL 2743420, *7 (E.D. Pa. Nov. 29, 2004) ("If a privilege log is submitted, it should identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure... A court must reject the claim [of privilege] when the party fails to provide a privilege log with sufficient detail to meet the legal requirements for application of the privilege." Internal quote marks and citation omitted); *Pensacola Firefighters' Relief Pension Bd. of Trustees v. Merrill Lynch Fenner &*

3

Only after Plaintiff wrote again requesting that Alcoa provide a proper privilege log, did Alcoa finally on June 6, 2012 provide a log identifying document authors and recipients. (See correspondence at Exhibit 1, amended log at Exhibit 3). Unfortunately, it is now clear why Alcoa was so unwilling to provide its log. Plaintiff has confirmed Alcoa improperly and without a good faith basis included documents on its log that should not have been included. By comparing these documents with how they are described on the log, one can see how Alcoa purposefully mischaracterized documents in an effort to portray them as privileged when they, in fact, are not. Nonetheless, Alcoa refuses to provide additional information about the documents nor will it agree to produce the other documents it is still withholding. This is incredible given that Alcoa has already violated one Court Order when it produced the obviously incomplete log on May 31, 2012. Even after Plaintiff sent a draft of this brief to Defendant, Defendant still would not respond or produce additional information or documents. (See correspondence at Ex. 1). Further despite Plaintiff's requests, to this day Alcoa refuses to identify which individuals listed in its log are attorneys.[2] Alcoa's actions are particularly concerning given that Alcoa has in fact been previously sanctioned by courts in other cases for discovery abuses, including abuses with regard to the provision of a privilege log.[3]

---

*Smith, Inc.*, 265 F.R.D. 589, 592 (N.D. Fla. 2010) ("[A] party claiming privilege is obliged to produce a privilege log and its failure to do so means the privilege is waived."); *Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 648-649 (D. Col. 2004) ("The failure to produce a privilege log or production of an inadequate privilege log may be deemed a waiver of the privilege asserted..."). (Selected cases are provided at Exhibit 28). Here, Alcoa's facially inadequate log should be deemed a violation of the Court's original order and a waiver of privilege.

[2] *See Klig v. Deloitte LLP*, 2010 WL 3489735, at *6 (Del. Ch. Sept. 7, 2010) (court ordered production of more than 300 documents listed on a privilege log because party had not disclosed adequate information describing those documents, and log failed to identify which individuals were attorneys); *ePlus Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, E.D. Va. Order dated Feb. 21, 2012, p. 8 (court ruled that privilege was waived and documents must be produced for reasons including that entries did not contain author or recipient information, and because entries that were identified as attorney-client privileged did not identify which individuals were attorneys).

[3] *See Consol. Aluminum Corp. v. Alcoa, Inc.*, 2006 WL 2583308 (M.D. La. July 19, 2006) (court ordered Alcoa to pay plaintiff's costs for re-deposing certain witnesses and awarded plaintiff costs and attorneys' fees incurred in bringing motion where Alcoa deleted relevant emails and other electronic data for years after it reasonably

4

## A. Examples of Documents Improperly Included in the Log.

Plaintiff has provided Alcoa with a spreadsheet reflecting how Alcoa has produced documents repeatedly and thereafter claimed privilege. (See spreadsheet excerpts attached as Exhibit 4). Presumably Alcoa and its attorneys reviewed each document before producing it on these many prior occasions, and concluded it was not privileged each time.

- As an example, a September 11, 1986 memo was produced 37 times by Alcoa between December 2011 and March 2012. (See item number 476 in spreadsheet at Exhibit 4 – each bates number range listed in the left-hand column reflects a different copy of the document that was produced). Inexplicably, however, Alcoa claimed privilege for the document in its log in June 2012. (The log listing is found at p. 71 of the log which is at Exhibit 3, bates numbers 916292 0131 through 0137).

- Reviewing the September 11, 1986 memo itself reflects the inaccuracy of the log. The log says the memo was from R.A. Milito to Laura L. Rippey and T.H. Sheffield. (Ex. 3, at p. 71). But the actual document was authored by Ms. Rippey and was sent not to Milito and Sheffield but rather to more broadly Industrial Hygiene (aka I.H.) domestic plant contacts, international plant contacts, Pittsburgh staff, Location Medical Directors, etc. (See copy of the memo at Exhibit 5). The wide distribution of the memo, plus its fairly general contents, reflect this memo is not privileged even assuming the author was an attorney.[4] This failure to properly describe the document in the log is a recognized basis for a motion for sanctions.[5]

- Another example is a September 22, 1994 memo logged at page 6 of Alcoa's log. (Ex. 3, listed as bates nos. MASSUP 6490 to 6493). Alcoa previously produced this document 33 times between June 2011 and March 2012. (See item 51 on spreadsheet at Ex. 4). Also the log inaccurately represents that the memo was only sent to four individuals. In fact, the document also was sent to all domestic industrial hygiene contacts, safety contacts, environmental contacts, medical directors, and nurses. (See copy of the memo at Exhibit 6). Again this mischaracterization is material, because the more recipients there are, the less likely the document is privileged.

---

anticipated the litigation, and even after the litigation actually commenced); *Fox v. Alcoa, Inc.*, 130 Wash. App. 1054, 2005 WL 3529127, *2 (Wash. Ct. App. Dec. 27, 2005) (court sanctioned Alcoa for violations in the discovery phase of an asbestos personal injury lawsuit, which included that Alcoa "provided neither the privilege log required by the parties' agreement nor the comprehensive answers to interrogatories required by the order to compel").

[4] Plaintiff in the meet-and-confer correspondence asked Alcoa to identify and provide detail regarding any document authors or recipients that it claimed were attorneys, however to date Alcoa has not responded with any information. See July 24 email included in Ex. 1.

[5] *See In re Omeprazole Patent Litig.*, 2005 WL 818858, at *9 (S.D.N.Y. Feb. 18, 2005) (a motion to compel is appropriate where the "description in the privilege log appeared to be calculated more to make it appear that these documents are properly subject to claims of privilege than to accurately describe what they actually are.").

5

- Finally, as one more example (there are many others Plaintiff can provide at the Court's request), see the February 5, 1973 memo listed at page 70 of Alcoa's log. (Ex. 3). In fact Alcoa produced this memo 49 different times. (Ex. 4, item 464). It is clear why Alcoa would want to claim the document is privileged, given that it says in part, **"[u]ntil all existing furnaces and pot linings have been converted to asbestos-free materials, we will have a problem making sure that our workers are not exposed to this hazard accidentally."** (Exhibit 7, emphasis added). However, the fact that a document goes to corroborate a party's liability is no reason to try to claim a privilege. As with many of the other documents, Alcoa's stated basis for privilege is that this memo was an attorney-client communication. However, the memo on its face does not reveal whether its authors, Sartschev and Carter, were attorneys. Nor has Alcoa responded to Plaintiff's request for more information regarding any authors that Alcoa claims were attorneys.

The many different bates numbers that are reflected on these documents show how they were produced at various different times in various different cases by Alcoa. Each time, Alcoa was represented by counsel and presumably reviewed the documents to confirm they were not privileged and that they should be produced. Yet now in the present case, Alcoa stubbornly insists the same documents are privileged, even when amending the log on June 6, 2012. In light of these facts, Alcoa does not have a good faith basis for its privilege log, which is especially true when one considers that it is Alcoa's burden to show that privilege applies.[6]

The undersigned has spent considerable time and expense reviewing Alcoa's log and comparing it to the documents Alcoa produced in this and other cases. Reviewing documents that Alcoa listed on the log and previously produced shows how Alcoa never had a good faith basis to log them in the first place. Mindful of the Court's policy against extensive discovery motions and filings, the undersigned attaches only some of the referenced documents discussed below as exhibits. However, the total number of documents discussed below exceeds 60 documents, which can be submitted to the Court on request. The vast majority of the documents

---

[6] Alcoa bears the burden of proving that the privilege is applicable. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Thus, "it is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *In re Grand Jury Subpoena*, 750 F.2d 223, 224 (2d Cir. 1984); *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 616 (Tenn. Ct. App. 2006); *Schmidt, Long & Assoc., Inc., v. Aetna U.S. Healthcare, Inc.*, 2001 WL 605199, at *2 (E.D. Pa. May 31, 2001); *Stabilus v. Haynsworth, et al.*, 144 F.R.D. 258 (E.D.Pa. 1992).

6

on the log to this day have never been produced. If the other documents withheld by Alcoa look anything like the ones Plaintiff describes below, it is clear Alcoa has improperly withheld voluminous nonprivileged documents. In this regard it is important to note that Alcoa has listed hundreds of documents on its 73-page log. In addition to the documents discussed above, other examples of documents improperly placed on the log include:

- At page 68 of its log, Alcoa purports to withhold a memo dated December 19, 1967 which was authored by Thomas B. Bonney. Alcoa asserts this memo is a "Communication between attorney and client regarding company policies and operations." (Ex. 3, p. 68). However, Alcoa's own corporate representative witness Mr. Shockey testified repeatedly that Mr. Bonney was not a lawyer, but rather an "industrial hygienist." (Exhibit 8 – Shockey deposition excerpts, Christensen case, pp. 203-04; Exhibit 9 – Shockey deposition excerpts, Millsaps, pp. 58-59). Reviewing the document itself, one can readily see why Alcoa would want to hide it. In this case John Millsaps claims he worked around "marinite" material which contained asbestos well into the seventies or later. The memo, which on its face is an ordinary business record, discusses how for the **"Marinite sawing operation … we feel that the dust generated should be controlled by exhaust ventilation; especially in view of the bad favor in which asbestos is presently being held."** (Exhibit 10, bates nos. ARD 42665 to 666, emphasis added). Although the document is addressed to the Wenatchee Works, it is clearly relevant and discoverable because marinite work was being done where John Millsaps worked, the document came from the Alcoa headquarters in Pittsburgh and it shows Alcoa's knowledge of marinite dangers and that it contained asbestos. The document is not privileged. Further the document on its face contains information adverse to Alcoa thus raising the grave concern that Alcoa logged this and the other documents simply to "hide the ball."

- At page 69 of its log, Alcoa claims attorney-client privilege for a memo dated August 8, 1968. (See memo attached at Exhibit 11, bates no. TEN001 0053). There is nothing in the memo to indicate that its author, J.C. Vergho, was an attorney. When Alcoa's corporate representative, Mr. Shockey, was asked who Vergho was, he said he didn't know. (Ex. 9, p. 244). The document itself was sent to eight different people, a wide distribution indicating no privilege. The contents do not include any attorney-client information. But it is noteworthy how, once again, Alcoa decided to include on its log a document that contains information adverse to Alcoa, regarding the Tennessee plant and how cutting marinite caused **"possible breathing hazards" and how "Visually, considerable dust escapes the collection equipment on all machines…."** (Ex. 11, emphasis added). There is nothing to indicate the document is privileged.

- Alcoa includes at page 13 of its log a June 4, 1990 memo, which it claims to be protected by attorney-client privilege. The memo which is found at Exhibit 12 discusses **"mesotheliomas"** related to "Refractory Ceramic Fibers" and contains this statement:

7

"As it relates to drawing analogies between RCF and coal tar pitch and crystalline silica, please be advised that there is evidence in the literature that **employees who took asbestos fiber-contaminated work clothes home in the asbestos industry contracted asbestosis and mesotheliomas in family members.** The purpose of wearing protective clothing for RCF is to prevent the dissemination of fibers from the work site to the public arena." (Ex. 12, Bates no. MILLSAPS7CTPS021017, emphasis added). It is difficult to imagine a more relevant statement that could be found in this household exposure case. The memo by Robert J. James was sent to thirteen separate Alcoa recipients reflecting its wide distribution and non-confidentiality. It also states how "Manville as well as Carborundum are also recommending that street clothes not be contaminated with fibers." (Bates no. MILLSAPS7CTPS021018). The author R.M. James may be the same person as "Bob James," who Mr. Shockey testified was not an attorney but rather "was the chief toxicologist/health director." (Ex. 9, p. 191).

- Exhibit 13 is a November 2, 1989 memo listed by Alcoa at page 1 of its log as being protected by attorney-client privilege. The actual document reflects no basis for privilege. (See Ex. 13, bates nos. Millsaps13ATTB006490-91). This document is from R.M. James to Jeff Shockey and includes "comments on proposed MSHA regulations." As noted above Mr. James is not believed to be a lawyer. The document includes comments about how the author believed that "The whole issue of carcinogenicity classification needs to be deleted" and that "The establishment of regulated areas, change of work clothes, showering, for classes of carcinogens is overkill." (See bates no. Millsaps13ATTB006490). If Defendant had taken the dangers of take-home exposure seriously, Brenda Millsaps may not have been exposed to lethal doses of asbestos. The document does not appear privileged, but rather a normal business record.

- Exhibit 14 is a May 3, 1983 memo listed by Alcoa at page 3 of its log as being protected by attorney-client privilege and attorney work product. The actual document does not back up this claim. (See Ex. 14, bates nos. 412577 0394 to 95). First, no author or recipient is identified. It is Alcoa's burden to show why privilege applies and it is not apparent here. The document is dated May 3, 1983 and discusses asbestos exposure incidents involving an employee in the machine shop of the Arkansas operations. (See 412577 0394). The document reflects the employee, Mr. Tedford, was "working in the Bldg. 148 Machine shop," he "remembers using compressed air to blow off an area to further clean it," the company did "Personal exposure sampling … while two Building Maintenance Mechanics used trowels to pry insulation (blocks covered with asbestos shorts) from the No. 3 steam chest," the document describes how **"It is unlikely that after this, an asbestos insulated compressor will again be taken into the shop before the insulation is removed," and how "Work in the Machine Shop in December was done without any special ventilation and no respiratory protection was used by the Machinist…."** (emphasis added). In this case, Mr. John Millsaps claims that he worked for long periods of time in a machine shop during his tenure at the Alcoa Tennessee plant and around asbestos shorts. The document is relevant to how Alcoa had knowledge of asbestos problems in the machine shops of other plants like the shop where Mr. Millsaps worked. The second page talks about a second incident involving a turbine overhaul, when "Mechanics removing asbestos" were sampled for asbestos. (See bates no. 412577

8

0395). Clearly both documents are relevant and given that both are simply reciting factual information they should not be privileged.

- Exhibit 15 consists of notes titled, "Asbestos Review Class," with the names Laura Rippey and Karen Krall, and listed by Alcoa at page 5 of its log as being protected by attorney-client privilege and attorney work product. (See middle of p. 5 of log, giving bates numbers CLV3 01422 to 0144). Alcoa describes the document as "Memo re Critical Issues Related to Asbestos" but the document nowhere says that. Alcoa says the document is subject to attorney-client privilege. In fact, this document appears to be typed notes from the asbestos review class from some time in the 1990s and includes relevant, non-privileged information. It includes discussion of how the "Tennessee" plant has an "in-house abatement crew" (010WAR01_00084135), comments on how "There is a concern of alleged health effects" (010WAR01_00084137), how at the Alcoa Wenatchee plant "Building space said non-asbestos but the torn out material turned out to be asbestos" (010WAR01_00084138), how "Gasket removal could be II or III" (i.e., could be Class II or Class II asbestos work), how "Brake shoes on crane or forklift truck is Class II" (010WAR01_00084141) (Mr. Millsaps alleges exposure to gaskets and brakes), and the document includes a comment that it would cost an "est. $500,000 to label asbestos. This money is not available," (010WAR01_00084147). The notes appear devoid of any attorney-client privileged information.

- Exhibit 16 is an August 2, 1991 document showing Alcoa belatedly adopting compliance policies. It is logged on page 6 of the log. In this memo the "asbestos purchase order note" that Alcoa plans to use is described, including how "The one suggestion … to add some definition around the word asbestos is a good one…." (bates no. C35794 1351). The memo lists asbestos-containing materials such as "Industrial equipment -- especially furnaces and ovens," "refractories," "insulation products," "certain building materials -- flooring, ceiling tiles, etc.," "friction products -- brake linings, clutch faces," and "gaskets, packings and seals." The memo does not contain any privileged information and is from Laura Rippey to J.KL. Fungaroli, R.H. Katila, R.M. James, Mary Grossman, and Russ Yester. The memo contains relevant information because it lists equipment that John Millsaps testified he worked around. The log entry is misleading because it states that the whole document (bates nos. C35794 1351 to 1356) is a memo. In fact, though, only the first two pages are a memo. The rest is an article from an industrial hygiene journal, which is plainly nonprivileged. (bates no. C35794 1353-56). The article among other things states how "The practice of dry removal of after-service sheet gaskets followed by dry polishing of the seating surfaces with a power sander, could create a short-term asbestos exposure level in excess of the OSHA Excursion Limit." (bates no. C35794 1353). There is no reason for this document to be on a privilege log.

- Exhibit 17 is a memo dated March 11, 1998 from Z.T. Gibson at the Alcoa Badin facility to Russell Porter in Alcoa's Pittsburgh office listing where numerous asbestos-related documents are located at Badin. (BDN 005013-14). Alcoa at page 9 of its log a) gives the incorrect bates numbers, saying it is BDN 0513-14; b) gives an incorrect description, saying it is an email when it is a memo; and c) claims attorney-client privilege when there is no privileged information in this memo, and it is relevant because it lists documents

9

that may provide evidence regarding issues of knowledge and notice, as well as categories of records that may exist not only at Badin but at other Alcoa plants. The identification of places at Alcoa Badin that had asbestos could assist in determining locations of asbestos at the Tennessee plant as well. Documents listed include "Asbestos Sampling 1972-80," "1988 Ingot Roof Flashing," "Asbestos Survey 1992," "Asbestos Removal & Abatement Contracts (Approximately 20 Contracts)," "Asbestos Abatement Reports (Approximately 15 Reports)." (bates no. BDN 005013). There may also be Alcoa safety rules and testing procedures of general applicability across the plants, such as: "Asbestos Handling," "Asbestos Sampling Reports," "Asbestos Compliance Encyclopedia (2 Volumes)," "Asbestos Understanding the Hazard (Training Video and Manual)." (See id.). This document lists many relevant and discoverable documents and things which Plaintiff does not believe has been produced to date by Alcoa.

- Exhibit 18 is an April 18, 1989 memo listed at page 18 of Alcoa's log (under bates nos. 511877 0076 to 077). The memo indicates that even as of the late 1980s, Alcoa still needed to "Identify asbestos containing materials, ACM in each facility." (bates no. 409824 0450). It further notes Alcoa needed to **"Communicate the presence of asbestos with employees where there is a potential for exposure."** (Id., emphasis added). Alcoa was still writing memos describing the need to "Label intact asbestos insulation," to perform "Abatement" on "deteriorated ACM," and stated that even as late as 1989, Alcoa was still purchasing asbestos containing **"brake linings and some pump packings."** (Id., emphasis added). The memo states that regarding Alcoa plants, "very few have inventories of ACM or any form of labeling." (Id. bates no. 409824 0451). "Inventories and the communication of presence of asbestos to the plant employees are critical in preventing unknowingly disturbing asbestos and possibly being exposed to airborne asbestos fibers." (Id.). The memo does not appear privileged.

- Exhibit 19 is a January 20, 1989 memo listed at page 27 of Alcoa's log. This is an Asbestos Program Status report dated January 20, 1989, and describes "Brick mason has confirmed asbestosis. Worked here 30 years, all as a Brick mason. Asbestos products were used in past years in the Ingot Plant furnaces," and also states how a "General Mechanic claimed asbestosis" and a "Facilities Service Department person claims asbestosis." The document appears relevant and not privileged.

- Exhibit 20 is listed at page 72 of Alcoa's log. It consists of "Alcoa Specifications for Miscellaneous Asbestos Abatement Work." Abatement records can assist to determine what asbestos-containing materials are located at a facility. Alcoa claims it is attorney-client and attorney work product material. A comparison of this entry to the actual document, however, reflects that it does not contain any privileged information. The document is nothing more than specifications for abatement work at the Rockdale, Texas plant from 1986 to 1989. (Bates ARD 7804-06 – see excerpts attached at Ex. 20). "The work shall include the removal of asbestos-containing materials." (Id. 7808). An Alcoa "Asbestos Removal Standard" dated August 1989 is included. (Id. 7877). "More than half of the states have laws related to asbestos. These unique state regulations are not covered in this standard, but whenever state or local requirements are more stringent, they should be followed over the Federal regulations." (Id. 7877). "Asbestos was used

10

extensively in the past for insulating boilers, furnace linings, steam pipe covering, duct work, gaskets, brake linings, sound insulation, roofing, floor tiles, and for general fireproofing." (ARD 7877). The asbestos standard does not appear to be limited to the Rockdale plant. Further: "Appropriate work clothing is required to be provided to employees when they are exposed to asbestos above the PEL and when the possibility of eye irritation exists. **The purpose of special clothing for asbestos jobs is to prevent the contamination of street clothing that will be worn home by the employee."** (Id. 7883, emphasis added). "Before leaving the work area, specific procedures should be followed for removal of protective garments so as not to contaminate the employee or the surrounding areas .... Any person who launders or cleans contaminated PPE [personal protective equipment] or work clothing is required to be informed of the potential harmful effects of asbestos and protective measures that should be taken. Contaminated work clothing should not be shaken or handled in a way that is likely to create airborne fibers." (ARD 7884-89). Unfortunately however Mr. Millsaps was never informed of the dangers.

- Exhibit 21 listed at page 72 of Alcoa's log is another similar set of asbestos abatement specifications dated September 3, 1992 also withheld as privileged. However this document is no more privileged in reality as the other, in light of the contents of the documents which were produced unredacted by Alcoa ion other litigation. (See excerpts at Ex. 21, Bates ARD 8107-8110).

- Exhibit 22 listed at page 72 of Alcoa's log is a third set of specifications but once again, Alcoa has produced the document elsewhere in unredacted form and from review it is plainly not actually privileged. (See Bates ARD 9120-25, excerpts).

- Exhibit 23 listed at page 72 of Alcoa's log is another specifications document listed in the log that was produced elsewhere and not privileged. (See bates nos. ARD 9268-73, excerpts).

- Exhibit 24 listed at page 72 of Alcoa's log is an April 1988 "Asbestos Removal Standard." Like the other asbestos removal standard documents, this is clearly not privileged and there was no good faith basis to withhold it. (See bates nos. ARD 014199-14213, excerpt).

**B.     Additional Examples of Documents Improperly Included in the Log (Copies of Documents Available Upon Request).**

Plaintiff has briefly summarized, in Exhibit 25, the remaining documents that Plaintiff

has determined were previously produced by Alcoa, listed on Alcoa's log herein, and which

never should have been listed on the log. These documents represent further evidence of Alcoa's

improper use of its privilege log but in the interests of not flooding the Court with documents,

11

Plaintiff has not attached these documents as exhibits. All of the documents discussed in Exhibit 20 are however available should the Court wish to review them. Plaintiff refers to the documents by their log item number found on the spreadsheet that Plaintiff has prepared, since Alcoa neglected to number its own privilege log entries. These excerpted spreadsheet entries for these documents are all collected at Exhibit 26.

### C.     Documents Improperly Included in the Log and Not Yet Produced.

Finally, the vast majority of the documents listed on the log still to this day have not been produced. A cursory review reflects that Alcoa has logged numerous documents that would appear to be highly relevant to this case involving as it does claims of decades of exposure of Mr. John Millsaps to asbestos in various places in the Tennessee plant, giving rise to a subsequent "bystander" claim after Ms. Millsaps died. For instance, the log lists documents dating back to the 1960s, 70s and 80s regarding asbestos issues, abatement, policies, etc. The minimal information in the log does not show how these materials are privileged. As examples:

- Throughout – Alcoa lists numerous documents where Alcoa claims attorney-client and/or work product privilege for these documents, yet does not list any author or recipient for most of them. Plaintiff questions how Alcoa can know these documents are privileged when it does not know the identity of the individuals involved and thus does not know if an attorney prepared the documents. See for example, entries at pages 4-6, 9, 11, 13, etc., of the log.[7]

- Alcoa lists various documents in which it identifies R.M. James as the author and states the document is attorney-client privileged, yet as discussed above, James is not believed to be a lawyer. Nor does Alcoa identify any of the recipients as lawyers. See for example, entries at pages 1, 13-15, 44, etc.[8]

---

[7] The case law states that identities of individuals should be provided. *See McCrink v. Peoples Benefit Life Ins. Co.*, 2004 WL 2743420, *7 (E.D. Pa. Nov. 29, 2004) ("If a privilege log is submitted, it should identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure... A court must reject the claim [of privilege] when the party fails to provide a privilege log with sufficient detail to meet the legal requirements for application of the privilege." Internal quote marks and citation omitted).

[8] *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) (finding no attorney-client privilege where party "does not identify any specific attorney with whom a confidential communication was made").

12

- Alcoa lists numerous documents stating that each is a "memo" and that it is privileged. Yet every "memo" discussed above clearly was not privileged. Thus Plaintiff seriously doubts that these other "memos" that Alcoa has yet to produce, could be privileged. See for example, entries at pages 1-6, 9-11, 13-14, etc.

- Alcoa lists various documents as being privileged that had literally dozens of recipients. It is highly unlikely that a document could go to so many recipients and yet be so confidential and have such an expectation of confidentiality that it really is privileged.[9] See for example, entries at pages 36-47, 57, 62, 64, etc.

- Alcoa lists various documents that it characterizes as being a "letter from counsel" but does not identify which person(s) involved were attorneys or provide enough detail to carry its burden of proving the document is privileged.[10] See for example, entries at pages 6-8, 10-11, etc.

- Alcoa lists documents as being attorney-client privileged that pertained to meetings, such as notes or memos from meetings. First, Alcoa has not identified attorneys. Second, even if an attorney attended, that in itself does not secure the privilege.[11] See for example, entry at page 70 (memo of meeting).

- Alcoa lists documents authored by Mr. Bonney or by Mr. Vergho. As discussed above, however, Mr. Bonney was apparently not an attorney and Alcoa's 30(b)(6) deponent did not know who Mr. Vergho was. See for example, entries at pages 69.

- Alcoa throughout its log, lists documents as privileged without giving any significant elaboration or detail, but rather simply repeating one of a few different general descriptive phrases. This is insufficient to show privilege applies.[12]

- The log entries at pp. 71-73 of the log – Alcoa claims attorney-client and/or work product privilege for these documents, yet does not list any author or recipient for most of them. Plaintiff questions how Alcoa can know these documents are privileged when it does not know the identity of the individuals involved and thus does not know if an attorney prepared the documents. Also, several of the items are described by Alcoa to be

---

[9] See ePlus Inc., No. 3:09-cv-620, E.D. Va. Order dated Feb. 21, 2012, p. 9 (in overruling privilege claim court noted that some log entries showed document went to ten or more people).

[10] See Winner v. Etkin & Co., 2008 WL 2486130, *4 (W.D. Pa. June 17, 2008) (noting that party in that case claiming privilege "wholly fails to establish that the lawyers involved were acting in a legal rather than business capacity or that the documents contain privileged client communications, as opposed to mere business or factual information.").

[11] See SmithKline Beecham Corp., 232 F.R.D. at 479 (E.D. Pa. 2005) (attorney's mere attendance at meeting does not make document about meeting privileged).

[12] See SmithKline Beecham Corp., 232 F.R.D. at 482 (E.D. Pa. 2005) (mere conclusive or general descriptions not sufficient to show that document us privileged).

13

"Asbestos Removal Engineering Standards" or "Alcoa Specifications for Miscellaneous Asbestos Abatement Work." None of these documents contain any privileged information because they are simply engineering standards or work specifications. Compare Exhibits 20-24 (discussed above – these are engineering standards or work specifications and are clearly not privileged).

It is especially puzzling that Alcoa would list so many documents on its 73-page privilege log when in other asbestos cases in which Alcoa produced documents, it did not provide any privilege log at all. (See Declaration of Valerie Farwell, Exhibit 27).

## III.   LEGAL DISCUSSION

Privileges are narrowly construed because their assertion results in the suppression of relevant evidence and stands "in derogation of the search for the truth." *See United States v. Nixon,* 418 U.S. 683, 710 (1974); *In re Grand Jury Invest.*, 723 F.2d 447, 451 (6th Cir. 1983). Claims of attorney-client privilege must be "narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *Winner v. Etkin & Co.*, 2008 WL 2486130, *3 (W.D. Pa. June 17, 2008). The burden is on Alcoa to show privilege applies. *Winner, supra* at *4.

The requirements for the attorney-client privilege are: (1) the holder of the privilege is a client; (2) the person to whom the communication was made (a) is a lawyer or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (4) the privilege has not been waived[13] by the client. *Humphreys, Hucheson & Moseley v. Donovan*, 568 F. Supp. 161, 175 (M.D.Tenn.

---

[13] The privilege may be waived by disclosure to third parties. Here, clearly, as to all the documents Alcoa produced in this or prior cases but listed on its log, the privilege has also been waived because Alcoa deliberately and intentionally produced all those documents. Plaintiff's motion, however, is concerned with all the other documents on Alcoa's privilege log it still has not yet produced.

1983);[14] *see also* Tenn. Code Ann. § 23-3-15 (1994); *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

"The attorney-client privilege is not absolute, nor does it cover all communications between a client and his or her attorney." *Boyd v. Comdata Network, Inc.*, 2002 WL 772803, *4 (Tenn. Ct. App. 2002). The communication must have been made in the confidence of the attorney-client relationship, *Bryan v. State*, 848 S.W.2d 72, 80 (Tenn. App. 1992), and must "involve the subject matter of the representation," *Boyd v. Comdata Network, Inc.*, 2002 WL 772803, *4 (Tenn. Ct. App. 2002); *Smith County Educ. Ass'n v. Anderson*, 676 S.W. 2d 328, 333 (Tenn. 1984).[15]

Here, as discussed above, Alcoa has refused to identify which if any of the individuals identified as senders or recipients of the logged documents were attorneys. This in itself is a basis to grant the instant motion because it is Alcoa's burden to show by detailed facts why the privilege applies. But beyond that, even assuming some of the people involved were attorneys, it remains that "simply copying corporate counsel on communications will not automatically cloak the document with privilege. There must be some explanation as to how the communication was for the purpose of securing legal advice." *Royal Surplus Lines Ins. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 463, 477 (W.D. Tenn. 1998). A pre-existing document which is not privileged

---

[14] Federal Rule of Evidence 501 states to apply state law to determine the applicability of attorney-client privilege in diversity actions. Here, the cause of action arose in Tennessee and Tennessee law favors making all relevant evidence available to the trier of fact except where protected by a specific privilege provided by the constitution, statutes, common law, and rules promulgated by the Tennessee Supreme Court. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002).

[15] "Simple business advice" is not privileged. *Winner, supra* at *4. Communications are protected only if they are "specifically based upon a client's confidential communication or would otherwise, if disclosed, directly or indirectly reveal the substance or tenor of a confidential communication." *Bryan*, 848 S.W.2d at 80. *See also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (privilege is limited to "only those communications necessary to obtain legal advice" and only applies "where necessary to achieve its purpose") (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986).

in its own right cannot be made privileged simply by giving the document to the party's present counsel.[16]

In addition, it is important to note that communications between an attorney and client of primarily a business nature are outside the scope of the privilege. *Edwards v. Whitaker*, 868 F.Supp 226, 228 (M.D. Tenn. 1994) ("the [attorney-client] privilege only applies if the lawyer is providing legal advice or services, and it will not protect disclosure of non-legal communications where the attorney acts as a business or economic advisor."); *In re Southern Indust. Banking Corp.*, 35 B.R. 643, 647 (Bankr. E.D. Tenn. 1983) ("[T]he participation of general counsel in the business of the corporation … does not automatically cloak the business activity with the protection of the attorney-client privilege."); *Puckett v. Arvin/Calspan Field Serv.*, 1986 WL 16714, *3-4 (6th Cir. 1986) (in-house counsel was acting in an administrative capacity so privilege did not apply).

Federal Rule 26(b)(3) governs the work-product privilege. *United Coal Companies v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). It protects documents prepared in anticipation of litigation but does not protect materials prepared in the regular course of business. *Raso v. CMC Equip. Rental, Inc.*, 154 F.R.D. 126, 127-128 (E.D. Pa. 1994); *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) ("It is clear that documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege."). The materials must have been "'prepared or obtained because of the prospect of litigation.'" *Roxworthy*, 457

---

[16] *See also Fisher v. United States*, 425 U.S. 391, 403 (1976) ("[t]his Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."); *Pennsylvania Transp. Auth. v. Caremark PCS Health*, 254 F.R.D. 253, 259 (E.D. Pa. 2008) ("What would otherwise be routine, non-privileged communications between corporate officers or employees … do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda"); *SmithKline Beecham Corp.*, 232 F.R.D. at 477 (E.D. Pa. 2005) (same).

.

F.3d at 593 (*quoting United States v. Aldman*, 134 F.3d 1194, 1202 (2d Cir. 1998)). In determining if materials were prepared "because of" litigation, the court will evaluate "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation was objectively reasonable." *Id.* at 594. However, "a generalized desire to avoid litigation is insufficient to meet the 'in anticipation of litigation' requirement." *In re Grand Jury Proceedings*, 2001 WL 1167497, at *15 (S.D.N.Y. Oct. 3, 2001).[17]

Plaintiff has shown how comparing available documents to the description in the log reflects that the privilege log descriptions and purported grounds for asserting the attorney-client or work product privilege are baseless. Clearly, the log was not prepared in a defensible manner. Accordingly, Plaintiff respectfully requests that the Court order Alcoa to produce all remaining documents listed on its privilege log. This Court should order that the Defendant produce all the documents and should not have to burden itself with lengthy in camera document review.[18] This is especially appropriate because, as explained above, review of the documents listed on the log established that Alcoa should never have included them on the log and certainly did not have a good faith basis for doing so. Parties withholding documents based on privilege are charged with justifying that privilege at the time the documents are withheld. Fed. R. Civ. P. 26(b)(5).

---

[17] As with the attorney-client privilege, the party asserting work-product doctrine bears the burden of proving the documents should be protected, *Roxworthy,* 457 F.3d at 593, and that the "anticipated litigation was the 'driving force behind the preparation of each requested document.'" *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009); *Roxworthy,* 457 F.3d at 595. Further, the work product doctrine does not extend to a document merely because it discusses or analyzes issues that are relevant to potential or pending litigation. Instead, the party asserting the privilege must demonstrate the correlation between each withheld document and the litigation for which the document was created. *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 69-70 (1st Cir. 2002).

[18] *See Klig v. Deloitte LLP*, 2010 WL 3489735, at *6 (Del. Ch. Sept. 7, 2010) (court ordered production of more than 300 documents listed on a privilege log because party had not disclosed adequate information describing those documents, and log failed to identify which individuals were attorneys; court did not find that first it had to review the documents *in camera* before issuing its ruling).

17

There was no basis for logging the documents herein.[19] Further, the clearly non-privileged nature of the documents discussed above casts doubt on the remaining entries in the log.[20]

Rule 37 sanctions are also clearly appropriate given that by providing a facially inadequate log that failed to even disclose senders or recipients, Alcoa violated this Court's own order that instructed the parties to provide privilege logs. Further, during the meet-and-confer process, Alcoa did not provide any additional information or even design to respond to Plaintiff's requests. Alcoa has engaged in a course of obstructive discovery conduct including with regard to the log, which was produced late, only after entry of a Court order, and which continues to this day to shield numerous documents from discovery. This misconduct has prejudiced Plaintiff during the discovery process given that factual discovery has now closed.

In the alternative, Defendant should be required to send some or all of the documents for the Court to review *in camera* or by a Special Master at Alcoa's expense.[21] In this regard

_____

[19] Furthermore, even after Plaintiff made multiple requests, Defendant still did not correct its log. *See In re General Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 532 (N.D. Ill. 2000) (court struck log because among other things "[w]hen the plaintiff pointed out obvious flaws in the log ... the defendant stridently refused to provide required information"); *B.F.G. of Illinois, Inc. v. Ameritech Corp.*, No. 99 C 4604, 2001 U.S. Dist. LEXIS 18930, *11-13 (N.D. Ill. Nov. 8, 2001) (finding that where "plaintiffs have demonstrated that they had good reason to be skeptical about the descriptions in the defendants' privilege log," the "appropriate remedy may be the abrogation of defendants' privilege log and an order to produce all withheld documents").

[20] *See B.F.G. of Illinois, Inc. v. Ameritech Corp.*, 2001 U.S. Dist. LEXIS 18930, *11-13 (N.D. Ill. Nov. 8, 2001) (rejecting defendant's assertion of privilege, the court noted that inaccurate descriptions of specified documents cast doubt on the accuracy of the other descriptions in the log -- "A particular problem with this scenario is that there is no way that the party seeking the documents can detect that improper use merely from the description on the privilege log."); *Mold-Masters Ltd. v. Husky Injection Molding Sys.*, 2001 U.S. Dist. LEXIS 20152, at **2-3 (N.D. Ill. Dec. 5, 2001) ("If the description falls below this standard and fails to provide sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney-client privilege or work-product doctrine, then disclosure of the document is an appropriate sanction.").

[21] *See United States ex rel. Fry v. The Health Alliance of Greater Cincinnati*, 2009 U.S. Dist. LEXIS 61163, at *2 (S. D. Ohio July 7, 2009) (*in camera* review of notes revealed they were not privileged); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies.").

Case 3:13-cv-00678-TAV-CCS    Document 94    Filed 08/02/12    Page 21 of 24
PageID #: 2237

Plaintiff suggests that the Court order that Plaintiff be allowed to select 50 listed items on the log, that Alcoa has not yet produced, for Alcoa to send to the Court for *in camera* review.[22]

Plaintiff also requests that the Court order that after Alcoa produce the documents from its privilege log to Plaintiff, that Plaintiff also be allowed to re-open the deposition of Alcoa's corporate representative to question him regarding the documents.

In addition, Plaintiff respectfully requests leave to submit their attorneys' fees and costs incurred in this motion. Plaintiff has incurred significant time in reviewing all the log entries and comparing them to other Alcoa documents in order to compile the summary above and in addition Plaintiff has compiled a lengthy spreadsheet, provided to Alcoa, detailing the facts of all the documents. Alcoa should properly be required to reimburse Plaintiff for these costs and fees incurred. A proposed order is provided herewith at Exhibit 29.

This the 2nd day of August, 2012.

s/Mona Lisa Wallace
Mona Lisa Wallace
N.C. Bar No. 9021
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
Tel. No. (704) 633-5244
Fax: (704) 633-9434
mwallace@wallacegraham.com

s/Gregory F. Coleman
Gregory F. Coleman, BPR No. 014092
Greg Coleman Law PC
Bank of America Center
550 Main Avenue, Suite 600
Knoxville, TN 37902
(865) 247-0080 (phone)
(865) 522-0049 (fax)
greg@gregcolemanlaw.com

---

[22] *See Teleglobe Communications Corp. v. BCE, Inc.*, 2006 WL 2568371 (D. Del. Feb. 22, 2006) (Special Master asked the plaintiffs to select 50 documents from the defendant's challenged privilege log for in camera review).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of August, 2012, I served the foregoing PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO STRIKE PRIVILEGE LOG AND FOR SANCTIONS on all counsel of record by electronic mail and/or regular mail as follows:

Robert E. Thackston, Beverly M. Bond, Stephanie L. Spardone
Edward Slaughter, Susan Egeland, Barret Marshall
Hawkins, Parnell, Thackston & Young LLP
4514 Cole Avenue, Suite 550
Dallas, TX 75205
rthackston@hptylaw.com
bbond@hptylaw.com
sspardone@hptylaw.com
eslaughter@hptylaw.com
segeland@hptylaw.com
bmarshall@hptylaw.com

John A. Lucas, John T. Winemiller
Merchant & Gould, P.C.
110 Tyson Blvd., Ste. 203
Alcoa, TN 37701-4111
jlucas@merchantgould.com
jwinemiller@merchantgould.com

Jack C. McCants
Forman Perry Watkins Krutz & Tardy
City Centre, Suite 100
200 South Lamar Street
Jackson MS 39201-4099
mccantsjc@fpwk.com

Steven L. Hurdle
Arnett Draper & Hagood
2300 First Tennessee Plaza
Knoxville, TN 37929
shurdle@adhknox.com

s/Mona Lisa Wallace
Mona Lisa Wallace

20

**List of Exhibits:**

Exhibit 1 -- meet-and-confer correspondence.
Exhibit 2 -- page from the original privilege log that Alcoa produced on May 31, 2012.
Exhibit 3 -- Alcoa's amended log dated June 6, 2012.
Exhibit 4 – Excerpts from spreadsheet with information on logged documents.
Exhibit 5 -- September 11, 1986 memo.
Exhibit 6 -- September 22, 1994 memo.
Exhibit 7 -- February 5, 1973 memo.
Exhibit 8 – Shockey deposition excerpts, Christensen case.
Exhibit 9 – Shockey deposition excerpts, Millsaps case.
Exhibit 10 – December 19, 1967 memo.
Exhibit 11 – August 8, 1968 memo.
Exhibit 12 – June 4, 1990 memo.
Exhibit 13 -- November 2, 1989 memo.
Exhibit 14 -- May 3, 1983 memo.
Exhibit 15 -- notes titled, "Asbestos Review Class."
Exhibit 16 -- August 2, 1991 memo.
Exhibit 17 -- March 11, 1998 memo.
Exhibit 18 -- April 18, 1989 memo.
Exhibit 19 -- January 20, 1989 memo.
Exhibit 20 -- asbestos abatement specifications.
Exhibit 21 -- asbestos abatement specifications.
Exhibit 22 -- asbestos abatement specifications.
Exhibit 23 -- asbestos abatement specification.s
Exhibit 24 -- April 1988 "Asbestos Removal Standard."
Exhibit 25 – summary of other documents that Alcoa previously produced then listed on log.
Exhibit 26 – additional spreadsheet entries.
Exhibit 27 – Declaration of Valerie Farwell.
Exhibit 28 – Selected Cases.
Exhibit 29 – Proposed Order.